UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____ )
JOSEPH SEGRAIN,                   )
                                  )
        Plaintiff,                )
                                  )
    v.                            )    C.A. No. 19-372 WES
                                  )
PATRICIA A. COYNE-FAGUE, alias,   )
in her official capacity as       )
Director of the Rhode Island      )
Department of Corrections,        )
WALTER DUFFY, alias, individually )
and in his official capacity as   )
Corrections Officer at the Rhode  )
Island Department of Corrections; )
RHODE ISLAND DEPARTMENT OF        )
CORRECTIONS, alias, JAMES         )
GLENDINNING, alias, individually  )
and in his official capacity as   )
Corrections Officer at the        )
Rhode Island Department of        )
Corrections; RONALD MELEO, alias, )
individually and in his official  )
capacity as Corrections Officer at )
the Rhode Island Department of    )
Corrections; JOHN DOES 1 – 5,     )
alias, individually and in their  )
official capacities as Corrections )
Officers at the Rhode Island      )
Department of Corrections,        )
                                  )
        Defendants.               )
_____ )

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

This case arises out of an alleged use of force by Defendants

that occurred on June 28, 2018, against Plaintiff Joseph Segrain,

an inmate at Rhode Island's Adult Corrections Institutions ("ACI"). Following an incident between Plaintiff and several correctional officers that culminated in those Defendants bringing Plaintiff to the ground and spraying pepper spray, Plaintiff filed a nine-count complaint in this Court. See Compl., ECF No. 1. Defendants Rhode Island Department of Corrections ("RIDOC"), Patricia Coyne-Fague (together "State Defendants"), Walter Duffy, James Glendinning, and Ronald Meleo (together "Individual Defendants"), (collectively, "Defendants") moved for summary judgment on the negligent infliction of emotional distress (Count IV); battery (Count V); violation of the Eight Amendment under the United States Constitution (Count VI); Article 1, Section 8 of the Rhode Island Constitution (Count VII); intentional infliction of emotional distress (Count VIII); and excessive force (Count IX) claims.[1] See Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") 2, ECF No. 67-1. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

---

[1]Counts I, II, and III (equal protection via § 1983, state equal protection, and violation of the Fourth Amendment) have been dismissed by agreement of the parties, as have all claims against Defendant Patricia Coyne-Fague in her individual capacity. See Stipulation, ECF No. 17.

I.  Background[2]

At all times material to this case, Plaintiff Joseph Segrain was incarcerated at the ACI's maximum-security facility located in Cranston, Rhode Island, in the Disciplinary Confinement Unit ("DCU").  Defs.' Statement Undisp. Facts ("DSUF") ¶¶ 1, 3, ECF No. 68-1; Pl.'s Statement Undisp. Facts ("PSUF") ¶¶ 1, 3, ECF No. 70-18.  On June 28, 2018, Plaintiff was released from his cell for shower and recreation time in an area known as the "flats," where a corrections officer issued him shower supplies, including a brush, safety razor, and mirror.  DSUF ¶ 10; PSUF ¶ 10.  After a short while, Defendant Meleo informed Plaintiff that he needed to return to his cell.  DSUF ¶ 11; PSUF ¶ 11.  Plaintiff objected, stating that he was entitled to one hour of shower and recreation time.  See DSUF ¶ 13; PSUF ¶ 13; DX9, Segrain Dep., 30:6-10, ECF No. 68-2.  In response, Defendant Meleo used the radio to alert Defendant Duffy, the shift commander at the facility, that there was a potential situation with an inmate in the flats.  DSUF ¶ 14; PSUF ¶ 14.

Defendants Duffy and Glendinning responded to the radio call.  DSUF ¶ 17; PSUF ¶ 17.  Defendant Meleo issued verbal orders to

_____

[2]As a preliminary note, there are certain material facts Plaintiff purportedly disputes but does not provide evidence to support his position.  The Court does not address those purported disputes.

Plaintiff to return to his cell, which Plaintiff refused.[3]  DSUF ¶ 17.  Defendant Duffy then provided a verbal command to Plaintiff to present and be handcuffed, which Plaintiff refused as well.[4] DSUF ¶ 17.  Defendants Meleo, Glendinning, and Duffy entered the flats where Plaintiff stood against the wall and Defendant Duffy gave Plaintiff a verbal warning.  DSUF ¶ 18; PSUF ¶ 18.  On directive from Defendant Duffy, Defendant Glendinning approached Plaintiff and ordered him to submit to be handcuffed.[5]  DSUF ¶¶ 18-19; PSUF ¶¶ 18-19.  Defendant Glendinning then escorted Plaintiff from the flats to the officer's area. DSUF ¶ 20; PSUF ¶ 20.

On the way to the officer's area, Defendant Glendinning noticed a DCU-issued mirror in Plaintiff's hand.  DSUF ¶ 21; PSUF ¶ 21.  Defendant Glendinning swatted the mirror out of Plaintiff's hand.  DSUF ¶ 21; PSUF ¶ 21.  Subsequently, Defendant Glendinning observed the end of a DCU-issued razor clenched in Plaintiff's

---

[3]Plaintiff purports to dispute that he received an order to cuff up.  PSUF ¶ 17.  But, according to Plaintiff's testimony, he does not recall if he received orders to return to his cell after he was told his shower time was up.  PX1, Segrain Dep. 30-21, ECF No. 70-1.

[4]Plaintiff disputes Defendant Duffy gave Plaintiff an order to cuff up.  PSUF ¶ 17.  But Plaintiff testified that he did not recall if he received an order to be handcuffed, see PX1 at 31-31, and Defendant Meleo does not recall hearing anyone giving Plaintiff an order to be handcuffed, see PX7, Meleo Dep., 25-25, ECF No. 70-7.  As such, Plaintiff failed to put forward evidence to genuinely dispute this issue.

[5]The parties dispute whether Plaintiff resisted Defendant Glendinning's order to be handcuffed.  Compare DSUF ¶ 19 with PX1 at 32.

right hand.  DSUF ¶ 22; PSUF ¶ 22.  Though issued by the RIDOC for their intended use, razors still pose a danger to inmates (both possessor and others) and staff.  See DSUF ¶¶ 23, 25; PSUF ¶¶ 23, 25.  Defendant Glendinning verbally ordered Plaintiff to drop the razor and Plaintiff did not.[6]  DSUF ¶¶ 22-23.  Defendant Glendinning tried to open Plaintiff's hand to retrieve the razor without success.[7]  DSUF ¶ 22.  At the same time, Defendant Glendinning alerted the other corrections officers in the escort of the razor in Plaintiff's hand.  DSUF ¶ 23; PSUF ¶ 23.  Defendant Duffy also ordered Plaintiff to drop the razor.[8]  DSUF ¶ 24.

---

[6]Plaintiff disputes whether he received a warning to drop the razor.  PSUF ¶¶ 22-23.  But Plaintiff's very own testimony confirms that Defendant Glendinning issued an order for Plaintiff to drop the razor.  See PX1 at 34-35 (when asked if he "ha[d] a recollection of Glendinning being surprised, Plaintiff responded "Yes. He said, he said, He has a razor. Drop the razor.").

[7]Plaintiff disputes whether Defendant Glendinning attempted to pry the razor from Plaintiff's hand.  See PSUF ¶ 22.  Instead, Plaintiff asserts Defendant Glendinning "immediately knocked him to the ground, without warning, without first asking him to return the razor, and without giving him a chance to do so." Id.  The video evidence shows, however, Defendant Glendinning trying to get something out of Plaintiff's hand.  DX14, Office Area Surveillance Footage, 4:47-4:50, ECF No. 68-2.

[8]Plaintiff purports to dispute whether Defendant Duffy issued an order to drop the razor.  See PSUF ¶ 24.  But Plaintiff misrepresents his own testimony when he states that no one gave him an order to drop the razor.  See supra note 6.  Moreover, in his testimony, Plaintiff does not testify that none of the other Individual Defendants ordered him to drop the razor.  See PX1 at 34-36.  Plaintiff also cites to Defendant Glendinning's testimony for the proposition that no other officer gave a command until he employed the leg sweep.  PSUD ¶ 24.  Defendant Glendinning responded "correct" when asked: "[O]ne, you ordered him to drop it. Two you told everyone – you announced that he's got a razor,

Because Plaintiff continued to grasp the razor after Defendants Glendinning and Duffy issued orders to drop it, Defendant Glendinning applied a leg sweep that resulted in Plaintiff falling to the ground.[9]  DSUF ¶ 25.  Plaintiff did not immediately drop the razor upon being neutralized by the leg sweep.[10]  DSUF ¶ 25; DX14, Office Area Surveillance Footage, 4:50-

---

and then – well, and then there were no more commands until the use of force, or until the leg sweep?"  DX11, Glendinning Dep., 43, ECF No. 68-2.  But, taken in context, Defendant Glendinning's testimony shows that he was referring to the commands he was issuing before he employed the leg sweep, not the commands of the other corrections officers.  See id. 42-44.  As such, this fact is not in genuine dispute.

[9]Again, Plaintiff asserts he did not receive any verbal commands before the leg sweep, however, this conflicts with his own testimony.  See supra note 6.  The assertion that Defendant Glendinning used immediate force after stating "he got a razor" conflicts with Plaintiff's own testimony and the video evidence.  See DX14 at 4:46-4:51 (showing Defendant Glendinning attempting to pry the razor from Plaintiff's hand before employing a leg sweep).

[10]Plaintiff asserts he dropped the razor while he was falling to the ground.  PSUF ¶ 25.  But Plaintiff's very own testimony is conflicting and ambiguous as to when he dropped the razor.  Compare PX1 at 35 ("Q. When Glendinning says that, did you drop the razor? A. I'm trying to drop it.  He's slamming, he's throwing me to the floor, and then I dropped it."); id. ("Q. At the time Glendinning did that, you were still holding the DCU razor?  A. No.  I guess it was on the floor.  As I'm going down to the floor, I drop it.") with id. at 36 (Q. "When you were on the ground, or by the time you were on the ground?  A. By the time I'm getting to the floor, I dropped the razor.  Q. Listen, like I said, I'm going through this in probably a lot slower detail than you want.  I'm just trying to make a -- A. I keep explaining the same thing.  I told you what I can recall.  I'm not sure, but as I'm going to the floor, I'm dropping the razor.); id. (Q. "By the time you were on the floor, the razor was out of your hand?  A. As I can recall, as I'm going to the floor, I'm dropping the razor.  It could have dropped as I'm on the floor or before I was hitting the floor.  But as I'm getting to the floor, I am dropping the razor.").

4:57, ECF No. 68-2.  After Defendant Glendinning applied the leg sweep, but before Plaintiff dropped the razor, Defendant Duffy applied a microburst of pepper spray, also referred to as Oleoresin Capsicum, ("OC").  DSUF ¶ 26; PSUF ¶ 26; DX14 at 4:53-4:54.  Based on the video evidence, almost simultaneous with Plaintiff dropping the razor, Defendant Duffy applied a second microburst.  DSUF ¶¶ 26-27; DX14 at 4:55-4:58.  Defendant Duffy testified that he applied a second microburst because not enough pepper spray discharged during his first attempt.  DSUF ¶ 26; DX6, Duffy Dep., 97-98, ECF No. 68-2; see also PSUF ¶ 26.  The parties dispute where Defendant Duffy directed the pepper spray: Defendants assert that Defendant Duffy directed the pepper spray at the floor, DSUF ¶ 26, whereas Plaintiff asserts it was discharged directly into his face, PSUF ¶ 26.

After Plaintiff released the razor, Individual Defendants brought Plaintiff to his feet and escorted him to the holding cell.  DSUF ¶ 28; PSUF ¶ 28.  Defendant Duffy coordinated Plaintiff's medical assessment and decontamination.  DSUF ¶ 29; PSUF ¶ 29.  Plaintiff remained in the holding cell for approximately thirteen minutes before receiving a medical observation and decontamination.[11]  DSUF ¶ 33; PSUF ¶ 33; DX14 at 5:19-18:17.

---

Moreover, the video evidence demonstrates the razor fell to the ground after Defendant Glendinning pinned Plaintiff to the ground. See DX14 at 4:50-4:57.

[11]Plaintiff attempts to dispute that he did not receive

7

Defendants assert that the delay was due to RIDOC not having adequate staff to escort Plaintiff to medical treatment immediately after being pepper sprayed. DSUF ¶¶ 29, 31. Plaintiffs assert the flooding in Plaintiff's holding cell instigated by him caused the delay to getting him transferred. PSUF ¶ 31. Plaintiff also infers bad intent, without evidence, that officers purposefully did not move Plaintiff because officers were "milling around" the officer's area. Id. ¶ 29. While in his holding cell, Plaintiff had access to water that could allow him to self-decontaminate, DSUF ¶ 30; PSUF ¶ 31, but that would have been difficult to do given that Plaintiff's hands were handcuffed behind his back. DSUF ¶ 31; PSUF ¶ 31. Under RIDOC's policy concerning the use of pepper spray, corrections officers have a duty to escort inmates to decontamination as soon as practicable. DSUF ¶ 31; PSUF ¶ 31; DX3, Storage, Issuance, Use, and Accountability of OC, PepperBall and/or Chemical Agents, Policy No. 9.44-4, ECF No. 68-2. Plaintiff's medical review revealed "no bruises or injuries; inmate fine." DSUF ¶ 34; PSUF ¶ 34; DX15, Medical Review of Dorothy Krakue, ECF No. 68-2. Plaintiff wrote a letter to Defendant Coyne-Fague and reported that he "couldn't

---

decontamination right after he left his holding cell. PSUF ¶ 33. With only conjecture, he argues that, because he was escorted back to his cell about twenty-two minutes after he left his holding cell, Plaintiff may have had to wait longer before he received decontamination. Id. Plaintiff's assertion, however, is not enough to create a genuine dispute.

breath" and that he "felt like [he] was going to die" because of the pepper spray.  PX14, July 9, 2018 Ltr. From Segrain to Coyne-Fagure, ECF No. 70-12.

Per RIDOC's grievance policy, see DX17, Inmate Grievance Procedure, Policy No. 13.10-2, ECF No. 68-2, Plaintiff submitted a grievance with respect to the use of force on the part of Defendants Glendinning and Duffy on July 3, 2018.  DSUF ¶ 39; PSUF ¶ 39; DX19, Segrain Grievance, ECF No. 68-2.  The grievance did not identify Defendant Meleo.  After submitting his grievance, the Office of Inspection ("the Office") informed Plaintiff that his grievance could not be processed until it completed its investigation into the incident.  PSUF ¶ 39.  RIDOC never notified Plaintiff of the status of the Office's inquiry.  Id. ¶¶ 39-40. Defendants provided information to Plaintiff's counsel concerning the investigation in April 2023.  Id. ¶ 40.  Because Plaintiff was not notified of the Office's investigation, Plaintiff did not re-file his grievance.  Id. ¶¶ 39-40.

About a year after filing his grievance, Plaintiff filed this Complaint bringing claims under the U.S. Constitution and various state tort claims.  See Compl. ¶¶ 46-63.  A number of those claims have since been dismissed by agreement.  See supra n.1.  This Court referred this case to mediation.  Aug. 19, 2021, Text Order, ECF No. 31.  Mediation was unsuccessful.  After extensive discovery, Defendants moved for summary judgment on the remaining claims.

II.  Legal Standard

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a); see IDC Props., Inc. v. Chicago Title Ins. Co., 42 F.4th 1, 7 (1st Cir. 2022). "In ruling on the motion[,] the . . . Court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002) (quoting Barbour v. Dynamics Rsch. Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

The movant bears the initial burden of establishing that there is no genuine issue of material fact, and, if that burden is met, the burden shifts to the non-movant who avoids summary judgment only by providing properly supported evidence of disputed material facts that require a trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Fed. Ins. Co. v. Russell L. Sisson & Sons, C.A. No. 18-441-WES, 2021 WL 4263624, at *1 (D.R.I. Sept. 20, 2021).

"[M]ere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247–48 (1986).  "A dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the

favor of the non-moving party.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23–24 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." Id. at 23 (citation omitted). "A court will disregard conclusory allegations, improbable inferences, and unsupported speculation in determining whether a genuine factual dispute exists." Id. at 24 (citation omitted). The Rule plainly allows for the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see Vineberg v. Bissonnette, 529 F. Supp. 2d 300, 302 (D.R.I. 2007).

III. Discussion

    A. Prison Litigation Reform Act

        1. Administrative Remedies

    Defendants first argue that all of Plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because he failed to exhaust his administrative remedies. The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other corrections facility until such administrative remedies as are available are exhausted.

Id. Exhaustion of administrative remedies is "mandatory" and "a prerequisite to suit," even if the available remedies are not "plain, speedy, and effective" or "do not meet federal standards." Porter v. Nussle, 534 U.S. 516, 524 (2002).

A prison's own requirements define the boundaries of proper exhaustion under the PLRA. See Jones v. Bock, 549 U.S. 199, 217-18 (2007) ("[T]o properly exhaust administrative remedies [a] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules' . . . that are defined not by the PLRA, but by the prison grievance process itself." (quoting Woodford v. Ngo, 548 U.S. 81, 93-95 (2006)). Here, RIDOC's grievance policy in place at the time of the alleged incident provides that all inmates are eligible to file grievances concerning interpretation and application of policies, rules, and procedures of the RIDOC facilities, individual employee actions, matters relating to access to privileges, programs, and services, conditions of care or supervision, and living facility conditions within the authority of RIDOC. DX17 at 4. An inmate must file a grievance within five days of the incident or within five days after they became aware of the incident. Id. at 3. The inmate can also seek an enlargement of time to file a grievance by submitting a request. Id. at 13. "Once all extensions have been exhausted and the grievant still desires to seek further action,

s/he may attempt to have the matter addressed in the Court system."
Id. at 14.

Defendants argue that Plaintiff failed to exhaust his administrative remedies. Defs.' Mem. 12-14. First, Defendants argue that Plaintiff failed to file an appeal of his use of force grievance. According to Defendants, because Plaintiff's initial grievance was returned unprocessed due to the Office having not completed its investigation, Plaintiff should have either re-filed his grievance or filed an appeal of his unprocessed grievance. Second, Defendants argue that Plaintiff failed to identify Defendant Meleo in his initial grievance. Because of these two failures, according to Defendants' argument, the case should be dismissed.

With respect to the issue of whether Defendant should have appealed his grievance, Plaintiff contends that he was never notified that the Office completed its investigation. See DSUF ¶ 39; PSUF ¶ 39; DX19. Following Plaintiff's timely filing, RIDOC informed him the grievance would not be processed until the Office completed its inquiry. DX19. It also provided that, once the Office informed Plaintiff of the outcome, he could re-file his grievance. Id. Plaintiff swears that RIDOC never notified him that the inquiry was complete and, thus, he was not aware that he could re-file the grievance. PX16, Segrain Aff., ¶ 6, ECF No. 70-14. Defendants do not offer any evidence to contradict this

assertion; they cite only to the grievance form, which does indicate that the inquiry was completed, but does not indicate that this was ever communicated to Plaintiff. See Defs.' Mem. 13-14; DSUF ¶ 39b; DX19. Defendant's reply does not address Plaintiff's contention. See generally Defs.' Reply Mem. in Support of Summ. J., ECF No. 71. If Defendants never informed Plaintiff that the investigation was complete, they cannot now argue that Plaintiff should have done something in response. Accordingly, summary judgment cannot be granted on the basis that Plaintiff failed to exhaust his administrative remedies by failing to re-file or appeal the grievance. Cf. Small v. Camden Cty., 728 F.3d 265, 273 (3d Cir. 2013) ("Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes.").

Defendants further argue that Plaintiff did not properly exhaust his administrative remedies as to his claims against Defendant Meleo because Plaintiff failed to mention Defendant Meleo in his grievance. Defs.' Mem. 14. Interpreting the PLRA, the Supreme Court concluded that the exhaustion requirement does not apply on a defendant-by-defendant basis, stating that "nothing in the statute imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. 199, 217 (2007). Accordingly, there is no basis for singling out the claims against Defendant Meleo for dismissal for failure to exhaust administrative remedies.

14

2. Physical Injury

Defendants next argue that the PLRA limits Plaintiff's damages[12] because there is no evidence in the record that he suffered any physical injury. Defs.' Mem. 14. The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other corrections facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." § 1997e(e). Although the First Circuit has yet to elaborate on what constitutes a "physical injury," see Sanders v. Arseneault, No. 19-cv-12284-IT, 2021 WL 982452, at *5 n.2 (D. Mass. Mar. 16, 2021), other circuits have held that a "physical injury" must be more than "de minimis" but need not be "significant," e.g., Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

Courts have reached varying conclusions as to whether the use of pepper spray is enough to satisfy the PLRA standard. Numerous courts have characterized injuries from pepper spray as de minimis, particularly where the symptoms alleged are relatively mild. See, e.g., Jennings v. Mitchell, 93 Fed. Appx. 723, 723 (6th Cir. 2004)

---

[12]The PLRA's physical injury requirement limits the availability of compensatory damages where a plaintiff claims mental or emotional injuries but has no effect on the availability of nominal damages, punitive damages, declaratory relief, or injunctive relief. See Kuperman v. Wrenn, 645 F.3d 69, 73 n.5 (1st Cir. 2011); Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002); Searles v. Van Bebber, 251 F.3d 869, 878-81 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000).

(characterizing physical injury from exposure to pepper spray as "de minimis" where plaintiff "[a]t no time was . . . in respiratory distress of any sort; he merely was uncomfortable in the ordinary fashion of persons exposed to pepper spray."); Porter v. Shumake, No. 6:15-cv-113, 2016 WL 3923421, at *13 (S.D. Ga. June 24, 2016) (concluding that allegations of plaintiff's "skin burn[ing] for twenty-four hours and . . . burning in his lungs and chest . . . do[es] not satisfy Section 1997e(e)'s physical injury requirement" and collecting cases concluding the same). Others have concluded, however, that § 1997e(e) "does not categorically bar prisoners from recovering compensatory or punitive damages for temporary (but greater than de minimis) injuries resulting from the unlawful use of pepper spray against them" when the injuries are more severe, including where the plaintiff was "left with chemical agents on his face for approximately twenty minutes; experienced coughing, difficulty breathing, and a prolonged burning sensation; was forced to take an extended shower to exacerbate the effects of the pepper spray; and was returned to a cell that remained contaminated with pepper-spray residue." Thompson v. Smith, 805 F. App'x 893, 901, 901, 904-05 (11th Cir. 2020).

This Court need not decide whether, as a rule, the use of pepper spray amounts to a "physical injury" under the PLRA. The severity of a pepper spray-induced injury may be different depending on the circumstances of a case. But a de minimis injury

16

is the kind "that would not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury." Jarriett v. Wilson, 162 F. App'x 394, 401 (6th Cir. 2005) (quoting Luong v. Hatt, 979 F. Supp. 481, 485 (N.D. Tex. 1997)).

There is a factual dispute as to whether he suffered more than a de minimis injury because of Individual Defendants' actions. According to Plaintiff, because of the pepper spray, he experienced severe pain, was temporarily blinded, was unable to breathe, and felt like he was going to die. PX1, Segrain Dep. 37-38, ECF No. 70-1; PX14. Moreover, the injuries Plaintiff sustained required him to receive medical attention and decontamination. DSUF ¶ 33; PSUF ¶ 33. Defendants' reliance on Plaintiff's medical review following the incident – where the nurse "found no bruises or injuries; inmate fine" – and the grainy photographs of Plaintiff in his holding cell, see DX20, Segrain Photographs, ECF No. 68-2, fail to demonstrate that Plaintiff experienced only de minimis injuries. Because Plaintiff has made a showing of physical injury sufficient to satisfy the requirements of the PLRA, summary judgment is not warranted on this issue.[13]    See, e.g. Taylor v.

_____

[13]Because the Court concludes that summary judgment is not warranted on either PLRA issue, it need not consider Plaintiff's argument that Defendants waived the PLRA affirmative defenses by failing to raise them in their first responsive pleading.  See Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") 17-19, ECF No. 69.

Wawrzyniak, No. 1:15-CV-104, 2016 WL 7664350, at *5 (W.D. Mich. Dec. 13, 2016).

B. Eighth Amendment (Count VI)

Defendants next argue that Plaintiff's Eighth Amendment claim of excessive force fails because the force Defendants Duffy and Glendinning applied was minimal and applied with good-faith to maintain and restore discipline. Defs.' Mem. 16-26.

Where an excessive force claim arises in the context of an inmate's interactions with corrections officers, it is most properly characterized as one invoking the protections of the cruel and unusual punishment clause of the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994) ("In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components - one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (quoting Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009)).

"To prevail on the objective prong, [a plaintiff] must show that 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). In other words, "[t]he objective

18

component requires the use of more than minimal force." Staples v. N.H. State Prison Warden (Staples I), No. 16-cv-33-PB, 2018 WL 3242285, at *3, *7 (D.N.H. July 3, 2018) (citing Hudson, 503 U.S. at 9-10), aff'd sub nom. Staples v. Gerry (Staples II), 923 F.3d 7 (1st Cir. 2019); see also Hudson, 503 U.S. at 9-10 (if force is de minimus, it the force must be "repugnant to the conscience of mankind" to rise to the level of cruel and unusual punishment).

As for the subjective prong, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Staples II, 923 F.3d at 13 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Relevant factors include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials, the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response." Id. (citation and internal quotation marks omitted).

### 1. Defendant Meleo

Summary judgment is appropriate as to Defendant Meleo. Plaintiff does not specifically allege, and the evidence does not show, that Defendant Meleo engaged in any use of force against Plaintiff. Rather, the evidence shows that Defendant Meleo

informed Plaintiff that his shower time had ended, ordered Plaintiff to return to his cell, entered the flats with the other corrections officers, and returned to his assigned duties following the altercation between Plaintiff and the other officers. See DSUF ¶¶ 18-30; PSUF ¶¶ 18-30. Accordingly, Defendants' Motion for Summary Judgment is GRANTED on Count VI as to Defendant Meleo.

### 2. Defendant Glendinning

Summary judgment is further appropriate as to Defendant Glendinning. Plaintiff alleges Defendant Glendinning acted with excessive force when he applied a leg sweep that knocked Plaintiff to the ground. Even looking at the record in the light most favorable to Plaintiff, no reasonable juror could conclude Defendant Glendinning either used more force than was required in the situation or that he failed to act in good faith.

### i. Subjective Prong

The subjective prong of the Eighth Amendment test to determine whether an officer has a "sufficiently culpable state" is "demanding." Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). In this instance, the factors outlined in Whitley counsel a finding of good faith on the part of Defendant Glendinning.

First, Plaintiff's possession of the razor was reasonably perceived as a threat to the corrections officers escorting him.

See Whitley, 475 U.S. at 321 ("[E]qually relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.").  After failing to comply with verbal commands, corrections officers approached, handcuffed, and escorted Plaintiff to the officer's area.  Subsequently, Defendant Glendinning observed a DCU-issued razor in Plaintiff's possession.  DSUF ¶ 22; PX1 at 34.  In response, Defendant Glendinning tried, without success, prying the razor out of Plaintiff's hand.  Upon Defendant Glendinning informing the other officers in the escort of the razor, Defendant Duffy further commanded Plaintiff to release the razor.  DSUF ¶ 24.  Plaintiff's possession of the razor posed a safety risk given the undisputed evidence that even RIDOC-issued razors could be, and have been, manipulated to be utilized as weapons.  DSUF ¶ 23, 25; DX11, Glendinning Dep., 48-51, ECF No. 68-2.  In total, these facts demonstrate a reasonably perceived threat on the part of Defendant Glendinning.

Second, the Whitley factors concerning the use of force - the need for the application of force, the amount of force used, and the efforts to temper the severity of force - also counsel in favor of finding for Defendant Glendinning.  See 475 U.S. at 321.  Because Plaintiff did not immediately drop the razor, despite verbal orders to do so and Defendant Glendinning's efforts to pry

21

the razor from Plaintiff's hand, the situation warranted force. Further, the force that Defendant Glendinning applied was modest. See Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002) ("Prison officials are given 'wide-ranging deference' in their measures to restore order during disturbances." (quoting Whitley, 475 U.S. at 321–22)). Defendant Glendinning's leg sweep was a reasonable amount of force to restrain and extract the razor from Plaintiff's hand and neutralize any danger Plaintiff posed to himself and the other corrections officers. Given the circumstances, no reasonable jury could conclude that Defendant Glendinning acted "maliciously and sadistically" to cause harm to Plaintiff. See Staples, 923 F.3d at 13 (citing case where officer "did not act 'maliciously and sadistically' where he 'twisted' inmate's wrist and 'slammed' him into a wall because the officer 'did not use any force until [the inmate] disobeyed a command that was designed to maintain order within the prison; and, when [the officer] applied modest force, [the inmate] remained defiant.'" (quoting Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012)).

Finally, the last Whitley factor – "the extent of the injury inflicted" – also counsels in favor of Defendant Glendinning because Plaintiff has made no allegations that the leg sweep was the source of any of his injuries. See 475 U.S. at 321.

Plaintiff's arguments suggesting that Defendant Glendinning acted in bad faith are unpersuasive. See Pl.'s Mem. in Opp. to

Defs.' Mot. for Summ. J. ("Pl.'s Mem.") 32-34., ECF No. 69. According to Plaintiff, he was not possessing a weapon because Individual Defendants mistakenly did not give Plaintiff an opportunity to return his shower supplies, including his razor. Id. at 32-33. But that is immaterial. The undisputed evidence demonstrates that Plaintiff maintained possession of the razor despite orders to drop it and Defendant Glendinning's efforts to pry it out of his hand. Suggesting that Plaintiff would have complied with an initial request to present the razor flies in the face of the events that unfolded as told by the admissible evidence. It also undermines the risk Plaintiff posed to safety while he possessed the razor.

Moreover, Plaintiff asserts that the razors are not that dangerous because RIDOC issues these razors for use in the flats. Pl.'s Mem. at 33-34. This assertion, however, contradicts the undisputed testimony that even RIDOC-issued razors could be, and have been, used as weapons. DSUF ¶ 23b; PSUF ¶ 23b; DX11 at 48-51.

Plaintiff further asserts that Defendant Glendinning employed the leg drop without warning. Pl.'s Mem. at 34. But that argument ignores Plaintiff's own testimony. See PX1 at 34-35 ("[Glendinning] said, he said [']He has a razor. Drop the razor. [']"). Prior to administering the leg sweep, Defendant Glendinning

23

issued an order for Plaintiff to drop the razor and attempted to grab it out of Plaintiff's hand.  DSUF ¶ 22; PSUF ¶ 22.

In sum, Plaintiff's arguments fail to create a genuine issue of material fact concerning Defendant Glendinning's good faith effort in employing the leg sweep on Plaintiff.

### ii.   Objective Prong

Nor could a reasonable jury conclude that Defendant Glendinning's application of the leg sweep "was objectively harmful enough to establish a constitutional violation." Staples II, 923 F.3d at 13.  Violative conduct excludes the "recognition [of] de minimis uses of force." Hudson, 503 U.S. at 10-11; see Staples I, 2018 WL 3242285, at *3, *7; Dean, 984 F.3d at 392 (explaining that "de minimis or trivial force is not enough" under the subjective prong).  As already noted, Plaintiff did not allege that the leg sweep was the source of any of his injuries.  See Compl. ¶ 19.  And the medical review following the incident revealed "no bruises or injuries."  DX15.  In response to Defendants' motion, Plaintiff has not pointed to any evidence to suggest that the leg sweep caused anything other than an injury that is de minimis.  Accordingly, Defendants' Motion for Summary Judgment is GRANTED on Count VI as to Defendant Glendinning.

### 3. Defendant Duffy

Summary judgment is also appropriate with respect to Defendant Duffy.  Plaintiff alleges that Defendant Duffy acted

with excessive force when he applied two microbursts of pepper spray after Defendant Glendinning employed the leg sweep. He alleges Defendant Duffy further acted with excessive force when he delayed Plaintiff's decontamination. Even crediting Plaintiff's testimony of how Defendant Duffy applied the pepper spray, no reasonable jury could conclude either that Defendant Duffy failed to act in good faith or used more force than the situation required.

i. Objective Prong

The utilization of the pepper spray and the delay in decontamination cannot be seen as being so repugnant as to constitute a constitutional violation. "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319. In fact, a "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir.1996) (footnote omitted) (citing Soto v. Dickey, 744 F.2d 1260, 1262 (7th Cir. 1984), cert. denied, 470 U.S. 1085 (1985)). The use of pepper spray can be "reasonably necessary" "to subdue [a] recalcitrant prisoner[]" even if they are in their cell or in handcuffs. Soto, 744 F.3d at

25

1262 (quoting <u>Clemmons v. Greggs</u>, 509 F.2d 1338, 1340 (5th Cir. 1975)). The use of pepper spray can also be appropriate in situations where an inmate refuses to comply with orders. <u>See Allen v. Bosley</u>, 253 F. App'x 658, 659 (9th Cir. 2007)(finding lower court did not err in granting defendant's summary judgment motion on excessive force claim where officer used pepper spray because plaintiff "refused to comply with orders to submit to standard handcuffing procedure and attempted to block a cell extraction team from entering his cell").

Here, the evidence demonstrates that Defendant Duffy used the minimal amount of force necessary to maintain order. <u>See Staples I</u>, 2018 WL 3242285, at *3. As Defendant Glendinning applied the leg sweep, Plaintiff continued to grasp the razor, posing a serious threat to himself and others. By the time Plaintiff hit the floor the razor was still in his hands. DSUF ¶ 25; DX14 at 4:50-4:54. It was not until the second use of pepper spray that Plaintiff dropped the razor and Defendant Duffy heard Defendant Glendinning inform the other officers that Plaintiff dropped the razor. DSUF ¶ 13; DX6 at 109-110; DX14 at 4:56-5:00. Once Defendant Glendinning informed Defendant Duffy that he released the razor, Defendant Duffy ceased the use of pepper spray. DX6 at 109-110.

ii. Subjective Prong

Similar to the reasons why Defendant Glendinning's leg sweep was in good faith, so too was Defendant Duffy's use of pepper

spray.  As explained above, see Part II.B.2.i, supra, Plaintiff created a threat to the corrections officers and himself when he failed to drop the razor in his hands despite orders to do so and attempts to remove it from his hands.  The threat did not cease when Defendant Glendinning applied the leg sweep.  DSUF ¶ 25c.  As demonstrated from the video evidence, when Defendant Duffy released the first microburst of pepper spray, Plaintiff still possessed the razor.  See DX14 at 4:54-4:55.  It was not until Defendant Duffy released the second microburst that Defendant Glendinning announced he had the razor.  Id. at 4:56-4:57; DX6 at 109-110.  Once Plaintiff dropped the razor, the threat extinguished and the officers used no further force.

Moreover, Defendant Duffy used an appropriate amount of force as the situation required.  As the record demonstrates, Defendant Glendinning ordered Plaintiff to drop the weapon and made attempts to remove it from his hands.  It was not until these repeated refusals to release the razor – even as Defendant Glendinning applied a leg sweep – did Defendant Duffy use the pepper spray. As the video record demonstrates, Plaintiff released the razor and Defendant Duffy applied the second microburst almost simultaneously.  Defendant Duffy ceased using the pepper spray once Plaintiff released the razor.  The use of pepper spray and Defendant Glendinning's use of the leg sweep were reasonable amounts of force to ensure the razor posed no other safety risks.

See Torres-Viera, 311 F.3d at 108 (concluding that the use of tear gas to respond to a prison disturbance was reasonable).  The force was required because Plaintiff refused to drop a potential weapon he was not entitled to possess.

Once he applied pepper spray to Plaintiff, he made reasonable efforts to temper the severity of its effects.  See Whitley, 475 U.S. at 321.  Based on the record evidence, corrections officers brought Plaintiff to decontamination approximately thirteen minutes after Defendant Duffy placed him in the holding cell.  See DX14 at 4:54-18:16.  During those 13 minutes, Plaintiff had access to water to decontaminate, although it would have been difficult to get the water's full relieving effect given that he was in handcuffs.  RIDOC policy requires that inmates subjected to pepper spray be decontaminated as soon as practicable.  Though the reason for the delay is in dispute, compare DX6 (blaming the delay on staffing) with PX10, Duffy Aff., ¶ 15.b (blaming the delay on running water from Plaintiff's hold cell), the fact of the delay is not a constitutional affront.  See, e.g., Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000) (no Eight Amendment violation where the effects of pepper spray went away after 45 minutes); cf. Jacoby v. Baldwin Cty., 596 F. App'x 757, 766-67 (11th Cir. 2014) (concluding that lack of decontamination for eight hours did not constitute deliberate indifference).  In sum, a jury could not reasonably conclude that Defendant Duffy acted maliciously when he

delayed decontamination to seek out staff to transport Plaintiff
to decontamination.

With respect to the time between Defendant Duffy using the
pepper spray and Plaintiff being escorted to decontamination,
Plaintiff offers nothing to suggest the delay was malicious, except
conjecture.  See Pl.'s Mem. 35-37.  For instance, without evidence,
Plaintiff attempts to dispute Defendant Duffy's assertion that he
was attempting to coordinate placement for an escort for
decontamination by making baseless assessments that corrections
officers were merely "milling around" in the officer's area to
suggest bad faith.  PSUF ¶ 29.  Also, Plaintiff attempts to cast
Defendant Duffy's attempts to coordinate decontamination by
placing Plaintiff in a holding cell with access to water as bad
faith – again, without evidence - by suggesting that he was
disregarding the RIDOC's decontamination policy.  See PSUF ¶ 31;
see Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 471 n. 6 (1st
Cir. 2010) ("unsupported speculation . . . is insufficient to
forestall summary judgment"); Hernandez v. Ashe, 745 F. Supp. 2d
15, 23 (D. Mass. 2010) ("Even assuming that the use of force here
was not de minimis, Defendants' motion for summary judgment on the
excessive use of force claim, in the court's view, should still be
granted as the record presents no evidence whatsoever of malicious
intent. Granted, Plaintiff believes that [the defendant] acted
with a culpable state of mind, but he supports that belief only

29

with his own subjective characterizations . . . .").   The undisputed record demonstrates Defendant Duffy made practicable efforts for Plaintiff to receive treatment and decontamination. Plaintiff's bald assertions fail to create a genuine dispute of material fact.

With respect to the injury, Plaintiff complains that he suffered from temporary blindness, difficulty breathing, and tremendous physical pain. Compl. ¶ 20. Plaintiff, however, failed to provide evidence to corroborate his alleged injury.   In any event, Plaintiff has failed to demonstrate that Defendant Duffy commenced his use of force for a reason other than the one he gave — namely, that Plaintiff posed a security risk at the time of the incident by refusing to comply with commands and release the razor. See Underwood v. Spencer, No. 14-cv-11055-ADB, 2020 WL 5584200, at *9 (D. Mass. June 22, 2020) (quoting Staples II, 923 F.3d at 14). "The mere fact that Plaintiff suffered a minor injury in or experienced pain following the incident cannot support a finding that the force used establishes the necessary wantonness." Wilbur v. Fitzpatrick, No. 1:18-cv-00255, 2019 WL 5929256, at *6 (D. Me. Nov. 12, 2019).

Consequently, Defendants' Motion for Summary Judgment is GRANTED on Count VI as to Defendant Duffy.

C. State Law Claims

Having dismissed Plaintiff's federal claims, Plaintiff's pendant state law claims remain. This Court must decide whether to exercise supplemental jurisdiction over these claims. Though the Court has the discretion to decline jurisdiction once the claims giving it original jurisdiction are dismissed, 28 U.S.C. § 1367(c)(3), it must balance factors under the "pendent jurisdiction doctrine" - judicial economy, convenience, fairness, and comity - to determine whether it should continue to hear the remaining claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see Senra v. Town of Smithfield, 715 F.3d 34, 41 (1st Cir. 2013) ("[T]he termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion."(quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)).

In this instance, the factors weigh in favor of retaining jurisdiction. This case has been pending for over four years since Plaintiff filed this action in federal court, discovery is complete, and the motions for summary judgment have been fully briefed. Plaintiff's claims can be easily addressed by the dispositive motion at hand and Plaintiff has not raised any "substantial question of state law." Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017). Further, it serves the interests of

judicial economy and the convenience of the parties for the Court to exercise supplemental jurisdiction. In sum, consistent with the practice of other courts, the factors warrant the exercise of the Court's discretion to retain supplemental jurisdiction. See, e.g., Xinrong Zhong v. Benvie, No. 14-cv-13076-IT, 2018 WL 10335959, at *4-*5 (D. Mass. Feb. 9, 2018).

      1. Negligent Infliction of Emotional Distress (Count IV) and Intentional Infliction of Emotional Distress (Count VIII)

For a plaintiff to recover under a claim for negligent infliction of emotional distress, he must be a member of one of two classes: he is either in the "'zone-of-danger' who [is] endangered by the acts of a negligent defendant" or is a "bystander[] related to a victim whom [he] witness[ed] being injured." Gross v. Pare, 185 A.3d 1242, 1247 (R.I. 2018). There are no allegations to suggest that Plaintiff fits either category. Thus, Defendants' Motion for Summary Judgment is GRANTED on Count IV as to Individual Defendants.

As for Plaintiff's intentional infliction of emotional distress claim, Rhode Island courts require "at least some proof of medically established physical symptomatology . . . ." Id. at 1246. Here, Plaintiff has not put forward no such evidence substantiating any physical manifestations of symptoms.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED on Count VIII as to Individual Defendants.

2. Battery (Count V) and Excessive Force (Count IX)

Plaintiff further alleges that the actions of Individual Defendants amounted to battery and excessive force. Under Rhode Island law, battery is "an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." Fenwick v. Oberman, 847 A.2d 852, 855 (R.I. 2004). Further, corrections officers are entitled to restrain a person as is necessary and force that is necessary and reasonable. R.I. Gen. Laws § 12-7-8. Like officers effectuating an arrest, the standards for determining battery by a corrections officer are essentially the same as the standards for determining an excessive force claim. Ashe, 745 F. Supp. 2d at 24; see Almonte v. Silva, No. CA 08-529 ML, 2010 WL 1292475, at *12-*13 (D.R.I. Mar. 3, 2010). Under the standard, officers may use force that does not reach the level of unreasonable or unjustified. See Ferreira v. City of E. Providence, 568 F. Supp. 2d 197, 208 (D.R.I. 2008); see also 6A C.J.S Assault § 34 (2023) ("[A] public officer acting under authority of law and without malice is not liable for assault and battery, provided he or she uses no more force than is reasonably necessary under the circumstances."); 6 Am. Jur. 2d Assault and Battery § 96 (2023)

33

("A police officer is not liable for assault and battery based upon the officer's lawful arrest of a person, where there was no use of excessive force, unreasonable contact, or the threat of unreasonable contact by the officer."). As explained in more detail in Parts II.B.2.i and II.B.3.ii, <u>supra</u>, Individual Defendants did not commit battery or use excessive force.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED on Count V and Count IX as to Individual Defendants.

### 3. Article I, Section 8 of the Rhode Island Constitution (Count VII)

Mirroring his federal claim, Plaintiff alleges violations of the Article I, Section 8 of the Rhode Island Constitution which protects citizens from cruel and unusual punishment. The Rhode Island Supreme Court has not directly answered the question of whether this provision is self-executing and creates an implied cause of action. <u>But see</u> <u>Linde v. State</u>, 78 A.3d 738, 742-44 (R.I. 2007) (adjudicating, in postconviction suit, whether a mandatory consecutive life sentence for discharging firearm while committing crime of violence resulting in death violates cruel and unusual punishment provision).

This Court need not decide the question of whether the provision creates an implied cause of action. Because the Rhode Island Supreme Court has held that the provision is "identical" to its federal counterpart, <u>State v. Monteiro</u>, 924 A.2d 784, 795 (R.I.

2007), this Court concludes that Plaintiff's claim under the Rhode Island Constitution falls with his claims under the Eighth Amendment. Thus, Defendants' Motion for Summary Judgment is GRANTED on Count VII as to Individual Defendants.

IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment, ECF No. 67, is GRANTED and judgment shall enter accordingly.[14]


IT IS SO ORDERED.

_WESmith_

William E. Smith
District Judge
Date: September 20, 2023

---

[14]Plaintiff is no longer pursuing injunctive relief against State Defendants as described in paragraph 65 of his complaint, Pl.'s Mem. at 49, and Plaintiff is not entitled to money damages under § 1983 because he is suing the State Defendants in their official capacity. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Moreover, because the Court granted Defendants' Motion with respect to Count VI against Individual Defendants, Plaintiff no longer has any continuing federal law claims against State Defendants. See Tyler v. Michaels Stores, Inc., 840 F. Supp. 2d 438, 452 (D. Mass. 2012) (stating that "dismissal of the underlying claims requires dismissal of the claim for declaratory relief as well"). Thus, Defendants' Motion on count VI is GRANTED as to the State Defendants. Finally, because Plaintiff sued State Defendants under a respondeat superior theory, Compl. ¶ 40, and the state law claims against Individual Defendants have been dismissed, Defendants' Motion is GRANTED on Counts IV, V, VII, VIII, IX as to State Defendants.