UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **JOSEPH SEGRAIN** <br> *Plaintiff,* | : <br> : <br> : |
| v. | :    C.A. No.: 1:19-cv-00372-MRD-AEM |
| | : <br> : |
| **WALTER DUFFY,** individually <br> *Defendant,* | : <br> : |

**DEFENDANT'S PRE-TRIAL MEMORANDUM**

Defendant, Walter Duffy, in his individual capacity, ("Duffy") hereby submits this Pre-trial Memorandum pursuant to this Court's Order dated February 3, 2026 (ECF 90) and ahead of jury trial scheduled for **March 30, 2026**.

1. **Brief Description of Facts:**

Plaintiff, Joseph Segrain, at this time of this incident, was an inmate in the custody of the Department of Corrections[1] and housed at the Maximum Security Disciplinary Confinement Unit ("DCU"), having been booked for several disciplinary infractions.[2] The claims articulated in Plaintiff's Complaint center around a failure of Plaintiff to obey orders by correctional officers to return to his cell after shower time in DCU on June 28, 2018, and subsequent use of force. On

---

[1] Plaintiff has been charged and convicted on several counts related to drug possession and a drive-by shooting (separate incidents), including felony assault, carrying a pistol, and discharge of a firearm. Segrain's release date on these charges and consecutive sentences is approximately 2106. Segrain is noted to be gang-affiliated and has been flagged for enemy issues.

[2] Prior to this incident, Segrain had amassed eleven disciplinary bookings spanning a period August 2012 through June 2018 with seven of those bookings occurring in 2017. Notably, on June 25, 2018, Segrain was booked for fighting with another inmate. On May 15, 2018, Segrain refused request for a pat-down, ignored commands of officers to comply and walked away from officers. This May 2018 incident was similar to an incident just one week prior, where Segrain displayed the same behavior.

June 28, 2018, Plaintiff was discharged from his cell in DCU for his designated shower. Per Department of Corrections Policy, inmates housed in DCU are afforded a shower at a designated time and for a designated length of time. Inmates are provided specific hygiene and personal care items related thereto. Shower and hygiene items are returned to officers following a shower and prior to return to cell. Defendant Duffy nor Correctional Officer (now Lieutenant Glendenning) provided Plaintiff with the personal care items that were on his person at the time of the incident.

On completion of the designated shower time, Plaintiff refused to return to his cell. As video surveillance illustrates, Plaintiff stood dressed, leaning against the wall, and ignoring instructions by correctional officers to return to his cell. The refusal to return to his cell prompted Defendant Duffy, a Captain at the Department of Corrections Maximum Security facility, to step in and repeat the requests of correctional officers for Plaintiff to return to his cell. The continued refusal of Plaintiff to return to his cell required correctional officers to enter the DCU shower area ("flats"), again instruct Plaintiff to return to his cell, and further warn that if he failed to do so, force would be required. Notably, as officers entered the flats, other inmates were present, all of whom were out on shower time and had presumably (from the perspective of officers entering the flats) been provided with the same hygiene items as Segrain, including razors. Indeed, as video surveillance illustrates, one inmate began approaching the officers.

With Plaintiff's continued refusal to return to his cell, he was instructed to "cuff up." Correctional Officer Glendinning applied handcuffs to Plaintiff so that he could be escorted back to his cell. As Plaintiff was being escorted through the officer's area at DCU, he was observed by Glendinning to be carrying a razor – that same razor issued to inmates for their shower and to be returned after use. Razors, though issued to inmates for singular use during shower time, must be returned and cannot be brought back to inmates' cells. They pose a threat to the safety of the inmate

and others by virtue of containing a blade, and razors can, and have been, manipulated to render them even more dangerous.  Plaintiff was ordered to drop the razor and refused.  On refusal to drop the razor, Glendinning applied a leg sweep designated to disarm Plaintiff and bring him to the floor in a fluid and nondisruptive manner.

Central to this case, while on the floor, Plaintiff further refused orders to drop the razor; a situation that presented a threat to both Segrain and others around him, prompting Duffy to apply a first burst of oleoresin capsicum "OC" spray.  The first attempt having failed to achieve the desired effect of release of the razor, Duffy applied a second small burst.  At or about the time the second burst was applied, Segrain released the razor.  Plaintiff was removed from the floor and placed in a DCU holding cell to await staff to transport him to the rear rooms for a decontamination shower and medical assessment.  The burst of OC was the least amount of force necessary to deescalate the situation, cause him to drop the razor, and restore and maintain discipline.

Plaintiff suffered no injury or harm during the incident.  Plaintiff was seen by medical staff post incident who observed no bruises or injuries and declared Plaintiff to be in good health without injury.  Similarly, a review of Plaintiff's medical records shows no mental health issues arising out of or related to this incident.[3]  Indeed, Plaintiff sought no medical treatment for either physical or mental health injuries after this incident.  Moreover, Plaintiff has disclosed no expert to opine as to any deviation from any standard of care relative to the application of force or to offer an opinion

---

[3]    Against these facts Plaintiff filed a nine-count complaint alleging: violation of the Equal Protection Clause (Counts 1 and 2); violation of the Fourth Amendment (Count 3); negligent infliction of emotional distress (Count 4); battery (Count 5); violation of the Eighth Amendment (Counts 6 and 7); intentional infliction of emotional distress (Count 8) and excessive force (Count 9).  By agreement, Counts 1, 2 and 3 were dismissed.  See ECF 17.  After grant of summary judgment, appeal to the First Circuit, and remand to the District Court, the sole remaining claim is violation of rights protected by the Eighth Amendment as against Defendant Duffy.

on any causal relationship between the application of force and any physical or mental health injury.

2. **Analysis of Applicable Law:**

The singular issue before this Court is Plaintiff's Eighth Amendment claim relative to the application of OC by Defendant Duffy – that is whether Defendant Duffy applied OC spray maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline and, assuming *arguendo* Defendant Duffy's act of application of OC violated Plaintiff's rights protected by the Constitution, whether Defendant Duffy is entitled to Qualified Immunity.

a. **Plaintiff's Eighth Amendment Claim:**

The Eighth Amendment prohibits infliction of cruel and unusual punishment. See Const. amend. VIII. The Eighth Amendment prohibits the use of excessive and unjustified physical force by prison officials against inmates. See Whitley v. Albers, 475 U.S. 312, 327 (1986). A plaintiff's claim of cruel and unusual punishment has two components: an objective component focusing on the conduct's effect and a subjective component, focusing on the defendant's motive for his alleged violative conduct. See Staples v. Gerry, 923 F.3d 7 (1st Cir. 2019).

i. *Objective Prong:*

Analysis of the objective prong requires an injured party to show that the alleged wrongdoing is objectively harmful enough to establish a constitutional violation. Hudson v. McMillian, 503 U.S. 1, 8 (1992). Under the objective component, Segrain must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Staples at 13. Plainly, not every push, shove, or even "malevolent touch" by a prison official gives rise to a constitutional violation. Id. The Eighth Amendment's prohibition against cruel and

4

unusual punishment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Staples at 13 (1st Cir. 2019) (quoting Whitley, 475 U.S. 312, 327 (1986)); see also Hudson, 503 U.S. at 8 ("the objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency'").

    *ii.*    *Subjective Prong:*

Analysis of the subjective prong turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. See Whitley v. Albers, 475 U.S. 312 (1986). Factors relevant to this determination include:

> (1) The extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials; (2) the need for the application of force; (3) the relationship between the need and the amount of force that was used; (4) the extent of the injury inflicted; and (5) any efforts made to temper the severity of a forceful response.

See Whitley at 321.

    *iii.*    *As applied to Defendant Duffy:*

In the application of OC spray, Duffy was engaged in a good faith effort to maintain or restore discipline. At the time the OC spray was applied, Plaintiff had already refused several orders to drop a weapon – contraband under DOC policy – a razor. Moreover, the application of OC spray was the minimal amount required to diffuse the situation and restore order and discipline. Indeed, only two small bursts were applied – only after a verbal request to drop the razor was refused, a leg sweep applied, and further verbal orders were refused. The safety and security of the institution is paramount; the smuggling of contraband in the form of a razor by any inmate presents a serious infraction. The evidence of threat is undisputed – a razor, even those issued by the DOC – poses a danger to staff and inmates alike; it can be modified, hidden, and used in

conjunction with other contraband. Further, an inmate restrained with a razor still poses a threat. It was Glendinning's undisputed testimony that an inmate could pivot his body and slash himself or another while restrained. That danger is magnified under the facts of this case where the inmate involved is gang related, has enemy issues, and significant disciplinary infractions that illustrate violent and disobedient behavior.

    b.    **Doctrine of Qualified Immunity.**

Qualified immunity precludes money damages against Defendant Duffy "insofar as . . . conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To overcome qualified immunity, Plaintiff must "mak[e] out a violation of a constitutional right and, second, establish[ ] that the right was 'clearly established' at the time of the defendant's alleged violation." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019).

> The 'clearly established' step comprises two subparts: first, whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right,' and second, 'whether in the specific context of the case, 'a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.'

Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009)).

Even assuming that an Eighth Amendment violation could be made out, the contours of the right to be free from excessive force were not sufficiently clear in these circumstances for Defendant Dufy to know his use of force violated that right. Clearly established law recognized that the right to be free from excessive force did not preclude prison officials from using force in "a good faith effort to maintain or restore discipline." Staples, 923 F.3d at 13 (quoting Whitley, 475 U.S. at 320-21. The evidence at trial will show Defendant Duffy acted in a good faith effort

to maintain or restore security in application of OC where Plaintiff had ignored prior verbal commands to do so and after other applications of force failed to restore discipline. No factual basis exists upon which Defendant Duffy could rationally be found to have used force "maliciously and sadistically for the very purpose of causing harm." Id. Indeed, the failure to extend qualified immunity to Duffy for this act ignores the speed of the moment and totality of circumstances faced and observed by Duffy. See Barnes v. Felix, 605 U.S. --- (2025); No. 23-1239, May 15, 2025.

3. **Identification of Evidentiary Issues[4]:**

Defendant anticipates the following evidentiary issues and reserves the right to assert such further and additional issues, inclusive of moving in limine, as those issues become known through pre-trial filings.

- Motion in limine to exclude testimony or video evidence of holding cell or lapse in decontamination: The singular issue before this Court is the use of force applied by Defendant Duffy. Any lapse in time experienced by Plaintiff prior to a decontamination shower was determined not to be a constitutional issue by the First Circuit. Video of holding cell footage or evidence related to lapse in time for decontamination would be inherently prejudicial; any lapse in time did not infringe on Plaintiff's constitutional rights as found by the First Circuit and, assuming it did, Defendant Duffy had no role in any lapse of time between application of OC and decontamination.

- Motion in limine to preclude reference to unrelated uses of force: The Plaintiff should be precluded from introducing testimony, evidence, or argument related to

---

[4] Defendant Duffy reserves the right to move in limine as respect to evidentiary issues as they arise.

any other use of force other than the singular incident actually at issue before the jury. Particularly, the Plaintiff should not be allowed to introduce any evidence or argument regarding: (1) uses of force by federal law enforcement including federal immigration enforcement; (2) uses of force by state and municipal law enforcement; (3) other uses of force at the ACI; (4) prior or subsequent uses of force by Captain Duffy. No evidence or argument regarding any use of force other than this particular incident upon which Plaintiff's claim is based should be in front of this jury. Such evidence or argument is irrelevant, is impermissible propensity/comparison evidence, is likely to mislead or confuse the jury, and is improper character evidence.

- Motion in limine prohibiting video footage or photographs until close of opening statements: The parties should not be permitted to play any video or show any photographs to the jury until opening statements have concluded and testimony has begun. Introduction of video or photographs before both parties have had a chance to provide opening statements would be more prejudicial than probative and poses sincere risk of confusing or misleading the jury.

- Motion in limine precluding introduction of Captain Duffy's prior testimony: Captain Duffy has been deposed in at least one other civil matter. The Plaintiff should be precluded from introducing testimony from other civil matters and from questioning any witness about unrelated testimony or lawsuits and from offering argument related to the same. Such testimony, questioning, and argument is irrelevant, is impermissible propensity/comparison evidence, is likely to inflame or confuse the jury, and is improper character evidence and inadmissible hearsay.

4. **Estimated Length of Trial:**

Defendant anticipates trial to be one week in length.

5. **Defendant's Witnesses:**

Defendant anticipates the following witnesses to be called in defense of this matter and reserves the right to call such other rebuttal witnesses as necessary.

- Walter Duffy, Captain, Department of Corrections: It is anticipated that Duffy will offer a firsthand account of the incident, his perception and assessment of the threat, and actions taken to restore discipline.

- James Glendinning, Lieutenant, Department of Corrections: It is anticipated that Glendinning will testify as to the commands he provided to Plaintiff, Plaintiff's refusal to adhere and act in compliance with those commands and the threat Plaintiff posed.

- Sergio Desousarosa, Deputy Assistant Director/Warden (retired), Department of Corrections: It is anticipated that Desousarosa will testify regarding the use of force and OC policies in effect at the time of the incident in addition to the testimony he offered as the Department of Corrections' identified 30(b)(6) witness.

6. **Trial Matters to be Addressed:**

Defendant anticipates the following additional issues to be addressed at trial:

- Use of Confidential Exhibits: Defendant anticipates entering certain exhibits that are confidential, the public disclosure of which would compromise the safety and security of the institution. These include, but are not limited to, video surveillance footage of the incident which depicts the Disciplinary Confinement Unit at Maximum Security and blind spots; non-publicly available DOC policies, including

the Use of Force Policy, and testimony related to the same. These materials were produced under a protective order during the course of litigation and should remain outside the public sphere at trial. Indeed, on submission of briefs to the First Circuit, these materials were produced under seal.

- Cooperation among Counsel: It is anticipated that Counsel for Defendant will share responsibilities of trial and defense of this matter, including designation of individual Counsel for each witness and other elements of the trial and that Plaintiff's trial team will similarly designate an individual student attorney for each witness and other element of the trial.

Respectfully submitted,

Defendant,

**WALTER DUFFY,** individually;

By:

**PETER F. NERONHA**
**ATTORNEY GENERAL**

*/s/ Matthew I. Shaw*
_____
Matthew I. Shaw, Bar No. 7325
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2226
Fax: (401) 222-2995
mshaw@riag.ri.gov

Dated: March 6, 2026

## **CERTIFICATION**

      I hereby certify that on this 6th day of March, 2026, I e-served and filed a copy of this Pre-Trial Memorandum through the Federal Court ECF filing system and that the same is available to all counsel of record.

*/s/ Matthew I Shaw*
_____